IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SALLY MARIE LASHLEY, | CV 17-110-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

On August 17, 2017, Plaintiff Sally Marie Lashley ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 1.) On October 17, 2017, Defendant filed the Administrative Record ("A.R.") (Doc. 6).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of Defendant's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings. (Doc. 13.) The motion is fully briefed and ripe for the Court's review. (Docs. 14-15.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court hereby finds that the case should be **REMANDED** for further administrative proceedings.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits and an application for supplemental security income benefits on November 7, 2013.  (A.R. 381-397.)  Plaintiff alleged she has been unable to work since July 27, 2012 due to her disabling condition.[1]  (A.R. 381.)  The Social Security Administration denied Plaintiff's application initially on March 12, 2014, and upon reconsideration on August 7, 2014.  (A.R. 235-260; 261-288.)

On September 11, 2014, Plaintiff filed a written request for a hearing.  (A.R. 301-302.)  Administrative Law Judge Michele Kelley (the "ALJ") held a hearing on July 28, 2015 (A.R. 77-115), and a supplemental hearing on January 20, 2016.  (A.R. 47-76.)  On February 18, 2016, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 27-40.)

Plaintiff requested review of the decision, and on June 23, 2017, the Appeals Council denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

---

[1] Plaintiff later amended her alleged onset date to October 1, 2012.  (A.R. 518-521.)

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.      Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180

F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the

Commissioner must "show that the claimant can perform some other work that

exists in 'significant numbers' in the national economy, taking into consideration

the claimant's residual functional capacity, age, education, and work experience."

*Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.  FACTUAL BACKGROUND

### A.  The Hearing

A hearing was held before the ALJ in Billings, Montana on July 28, 2015

(A.R. 77-115), and a supplemental hearing was held on January 20, 2016 (A.R. 47-

76).  Plaintiff testified about her current living situation.  (A.R. 87-92.)  She

explained that she lives with her 84 year old mother.  (A.R. 92.)  Her 8 year old

granddaughter also visits their home, but Plaintiff does not babysit her alone.

(A.R. 94-95.)  Plaintiff stated that she will sometimes sit on the couch and play a

game or do a puzzle with her granddaughter.  (A.R. 94.)

Plaintiff also testified that her ability to assist around the home is very

limited.  Plaintiff described her mother as being very independent, and stated she

does all the cooking.  (A.R. 92.)  Plaintiff tries to help her mother with other

household chores, but she has to pace herself in doing so.  (A.R. 92-93.)  She will

vacuum one room a day; but if she does more than that, she will trigger a muscle

spasm and exacerbate her symptoms.  (*Id.*)  She does not sweep or mop because it

hurts her back.  (A.R. 98.)  Plaintiff does her laundry, but indicated her mother washes her own clothes.  (A.R. 99.)  Plaintiff stated she is only able to do chores for 10-15 minutes at a time before she needs to take a break.  (A.R. 100.)

As to her physical limitations, Plaintiff testified she is in pain every day. (A.R. 94.)  Plaintiff stated that laying down is the best position to avoid aggravating her symptoms, and she estimated she spends about 3/4 of the month laying down the majority of the day.  (A.R. 96-97.)  She also sleeps a lot due to her medication.  (A.R. 95-96.)  Plaintiff testified that she can only walk for 5 to 10 minutes.  (A.R. 100.)  She explained that she has a cane and will use it at times. (A.R. 101.)  Other times, she carries it with her, in the event her muscles spasm and her back "locks up."  (*Id.*)  Plaintiff stated that she cannot be on her feet for any length of time.  (A.R. 54.)  Plaintiff said that she only showers approximately once per week because it is painful when the water hits her skin.  (A.R. 62.) Plaintiff said her ability to lift and carry things is also impaired due to limitations of her upper back, neck, arms and shoulder.  (A.R. 57.)  She indicated Dr. Nichols had limited her to lifting 10 pounds.  (A.R. 58.)  Plaintiff also explained that if her fibromyalgia flares up, she's not able to do anything for several days.  (A.R. 59.)

Plaintiff also testified that she has difficulty concentrating and focusing. (A.R. 64-65.)  She said she has problems meeting deadlines, doing paperwork, and

remembering if she took her medications.  (A.R. 65-66.)  She stated she depends on sticky notes to remember things.  (A.R. 65.)

**B.    Medical Evidence[2]**

a.    *R. James Nichols, M.D.*

Plaintiff has been treated by Dr. R. James Nichols since 2008 for management of fibromyalgia and degenerative osteoarthritis.  (A.R. 1064; 611-613; 752-757; 961-973; 979-995.)

On September 14, 2012, Dr. Nichols submitted a letter on behalf of Plaintiff.  (A.R. 785-86.)  He explained Plaintiff has been diagnosed with chronic fibromyalgia with myofascial pain syndrome, and degenerative osteoarthritis with degenerative disc disease in the cervical and lumbar spine.  (A.R. 785.)  He stated she also suffers from anxiety and depression.  (*Id.*)  He said Plaintiff is symptomatic on a daily basis, and he noted that she has shown a steady decline in function over the previous 5 years.  (*Id.*)  He further stated she requires frequent rest periods with lying down to relieve her discomfort.  (A.R. 786.)  Dr. Nichols opined that Plaintiff can only lift and carry 10 pounds occasionally, and that she is able to sit, stand, and walk for only 30 minutes at a time.  (*Id.*)  He further opined

---

[2] The administrative record includes Plaintiff's medical records from several health care providers.  The Court has summarized only those records that are relevant to the specific issues presented for review.

that Plaintiff is unable to engage in consistent work due to her physical and emotional disabilities. (A.R. 785.)

On July 7, 2016, Dr. Nichols wrote a second letter on behalf of Plaintiff. (A.R. 1064-65.) Dr. Nichols stated Plaintiff has on-going problems with reactive depression, anxiety, emotional problems, and has been diagnosed with PTSD. (A.R. 1064.) He stated she has received counseling and medications to help treat her depression and anxiety. (*Id.*) He further stated Plaintiff has been diagnosed with fibromyalgia, soft tissue injuries, chronic fatigue, and significant arthralgias of the knees, hips, back, neck, and upper extremities. (*Id.*) Dr. Nichols described Plaintiff's conditions as "ongoing and incurable," and opined that it was unlikely she would be able to "achieve any significant workability in the future." (*Id.*)

Dr. Nichols further opined that Plaintiff has a limited ability to stand and sit for any period of time due to lumbago, fibromyalgia, hip pain and upper back pain. (*Id.*) He stated she can only walk less than 2 hours per day. (*Id.*) He said Plaintiff would need a job that allowed for frequent position changes, she would require frequent unscheduled breaks, and her absenteeism from work may be significant due to the episodic and severe nature of her fibromyalgia. (*Id.*) Dr. Nichols further stated Plaintiff is unable to lift more than 10 pounds, and is unable to climb ladders, significant numbers of stairs, crouch or stoop, and can rarely twist. (*Id.*)

/ / /

9

b.     *Cheryl Lyson, MS, LCPC*

Cheryl Lyson is a Licensed Clinical Professional Counselor who has seen Plaintiff since 2008.  (A.R. 557-73; 891-944; 1000-1022; 1097-1105.)

On July 6, 2015, Ms. Lyson completed a Mental Impairment Questionnaire on behalf of Plaintiff.  (A.R. 1058-62.)  Ms. Lyson stated that Plaintiff suffers from major depression and PTSD, as well as physical conditions including chronic pain and fibromyalgia.  (A.R. 1058.)  Ms. Lyson stated she has observed the following symptoms in Plaintiff: fear, anxiety, sadness, recurrent thoughts and dreams, avoidance, loss of interest in activities, difficulty concentrating, depression, weight loss, and fatigue.  (*Id.*)  Ms. Lyson indicated that Plaintiff's prognosis was poor.  (*Id.*)

Ms. Lyson opined that Plaintiff has marked limitations in her ability to maintain concentration, persistence and pace.  (A.R. 1061.)  Ms. Lyson noted that Plaintiff is seriously limited in her ability to remember work-like procedures and maintain attention for 2 hour segments.  (A.R. 1059.)  She stated Plaintiff would be unable to maintain regular attendance, work in coordination with others, make simple work-related decisions, perform at a consistent pace, or deal with normal work stress.  (*Id.*)  Ms. Lyson indicated Plaintiff's limitations are due to short term memory, pain and poor concentration.  (*Id.*)  She also noted Plaintiff's thoughts

jump from one subject to another.  (A.R. 1061.)  Ms. Lyson further indicated

Plaintiff experiences a lot of pain.  (A.R. 1058-59, 1061-62.)

## C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering

Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since October 1, 2012.  (A.R. 29.)  Second, the ALJ found that

Plaintiff has the following severe impairments: "fibromyalgia/myofascial pain;

cervical and lumbar degenerative disc disease; left knee meniscus tear and

chondromalacia patella status post arthroscopic repair; depression; and post-

traumatic stress disorder (PTSD)."  (*Id.*)  Third, the ALJ found that Plaintiff does

not have an impairment or combination of impairments that meets or medically

equals any one of the impairments in the Listing of Impairments.  (A.R. 30-32.)

Fourth, the ALJ stated Plaintiff has the RFC to:

> perform a full range of light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) as follows: she can lift, carry, push, and pull twenty
> pounds frequently and twenty five pounds occasionally; can stand and
> walk six hours in an eight hour workday; can sit six hours in an eight
> hour workday; and can change positions at normal work breaks.  She
> can occasionally climb ladders, ropes and scaffolds, kneel, crouch and
> crawl.  She can understand, remember, and carryout unskilled tasks as
> well as maintain attention, concentration, persistence, and pace for
> unskilled tasks.

(A.R. 33.)

The ALJ next found that Plaintiff is able to perform her past relevant work as a cashier/hostess and store laborer.  (A.R. 38.)  The ALJ alternatively found Plaintiff could perform other jobs that exist in significant numbers in the national economy in light of her age, education, work experience, and RFC.  (A.R. 38-40.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 39.)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred in the following ways:  (1) improperly discrediting her testimony; (2) failing to give proper weight to the opinions of her treating physician; (3) failing to find her disabled under the Medical Vocational Guidelines Rule 201.14; and (4) failing to incorporate all of her impairments into the vocational consultant's hypothetical questioning.  (Doc. 13.)

### A.    The ALJ's Credibility Determination

Plaintiff argues the ALJ's credibility determination was erroneous because the ALJ failed to provide clear and convincing reasons for rejecting her testimony. The Commissioner counters that the ALJ properly discounted Plaintiff's symptom testimony.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other

symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if she provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester*, 81 F.3d at 834)). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility.

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

However, the ALJ may not reject a claimant's statements about the intensity and persistence of his or her pain or other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

Here, the first step of the credibility analysis is not at issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms. The ALJ failed to do so.

The ALJ discounted Plaintiff's testimony on grounds that she made inconsistent statements throughout the record. (A.R. 34.) Upon closer scrutiny, however, the purported inconsistencies the ALJ cited are not supported by the record.

The ALJ stated Plaintiff's testimony that she only showered once a week was inconsistent with her counselor's notes that reported Plaintiff was casually dressed but neat at her weekly appointments. (*Id.*) There is no obvious inconsistency, however, if Plaintiff's weekly shower occurred before her weekly counseling appointment. Further, Ms. Lyson's treatment notes indicate Plaintiff

reported not showering.  (*See* A.R. 940 ("Went for 3 days without showering");

1003 ("Shower pressure hurts her skin") 1099 ("Hasn't taken shower in 1 week");

1100 ("Hard to take shower . . . Showering is a chore.  Not showering as much as

she used to").)  Thus, the record does not support a finding of inconsistency with

regard to Plaintiff's showering.

The ALJ stated Plaintiff testified she had problems focusing, concentrating

and remembering, but found she was not credible because she played games and

puzzles with her granddaughter.  (A.R. 34.)  Plaintiff testified that her

granddaughter is 8 years old.  (A.R. 72, 94.)  The fact Plaintiff could play games

with an 8 year old child is hardly probative of whether she could sustain adequate

concentration, persistence or pace in a regular work setting.  Moreover, Ms. Lyson

repeatedly noted that Plaintiff had memory and concentration issues.  (*See* A.R.

560 ("very forgetful"); 563 ("scattered, can't focus"); 568 ("has to write things

down to remember"); 892 ("has difficulty concentrating, problems remembering

things"); 898 ("memory has been poor since the accident"); 907 ("Has to have

sticky notes all around the house.  Short term memory is not good."); 908

("concentration is poor"); 911(noting "not well oriented"); 914 ("mind gets lost at

times"); 918 ("Memory is poor.  Forgets things easily."); 920 ("Memory is poor.

Forgetful."); 921 ("Can't remember things."); 924 ("Very forgetful . . . uses sticky

notes to help remember."); 926 ("short term memory is very poor (makes lists and

can't remember them)"); 928 ("memory is poor"); 930 ("can't do math well anymore"); 931 ("memory is poor"); 940 ("forgot to turn off car all the way and the battery went dead"); 942 ("mind is not clear"); 1013 ("forgetful – has to do notes – disconnected"); 1015 ("short term memory is very poor"); 1101 ("has to writing things down to remember"); 1104 ("hard to focus and concentrate . . . very distracted"); and 562, 924, 926, 932, 940, 943, 1097, 1098, 1099 and 1105 (noting Plaintiff's concentration/focus was "impaired" and her attention span was "distracted").)

The ALJ also pointed to evidence in the treatment records indicating Plaintiff was doing yard work, mowing her lawn, raking leaves, was a caretaker for her mother, did laundry and fall cleanup, and took her dog for walks. (A.R. 34.) The ALJ stated these activities were inconsistent with Plaintiff's reported limitations in her ability to walk, sit, stand and perform postural activities. (*Id.*) The Court finds the ALJ took the evidence out of the context of the treatment notes as a whole. Plaintiff did report to various medical providers that she had engaged in physical activities such as yard work. But notably, every time one of these activities was mentioned, Plaintiff was contemporaneously reporting increased pain and was seeking treatment as a result. (*See* A.R. 599 (noting Plaintiff's "pain can also be worse with *excessive activity such as weeding*.") (emphasis added); 609 (noting Plaintiff reported problems with her right shoulder and indicated "it will

get better for a while; she will go out and do some lawn mowing and it will bother her"); 951-52 (noting Plaintiff had been referred for physical therapy due to intense back pain and stating Plaintiff "finds that the current things that she has been doing such as raking leaves and cleaning up her dog's poop in the yard *have aggravated her pain*") (emphasis added); 956-57 (noting Plaintiff's goals for physical therapy were to be able to walk more, bend and stoop for gardening, sit and stand, and mop, sweep and vacuum "*without pain*," indicating those activities caused her pain) (emphasis added); 979-80 (stating Plaintiff was seen for evaluation of low back pain with "locking sensation" after "doing fall cleanup"); 1023 (stating Plaintiff was seen for chronic low back pain, and noting she reported "*activity exacerbates her pain*, when she is doing housework she has to pace herself and take frequent breaks, the same with yard work . . . She avoids shopping or being on her feet for extended periods of time because that also exacerbates her pain.") (emphasis added).) Therefore, the evidence does not support a finding that Plaintiff was actually able to do these activities. To the contrary, because it is documented that her efforts to engage in these types of activities exacerbated her pain, it supports her testimony about her physical limitations.

In addition, the ALJ seizes on language that Plaintiff was a caretaker for her mother. (A.R. 34.) But the treatment notes that reference Plaintiff's mother lack specificity. They do not indicate whether Plaintiff actually physically assisted her

17

mother. (*See* A.R. 956 (stating Plaintiff lives with her mother "who she helps out and is a bit of a caregiver for," but does not describe the manner in which she helps her mother, or quantify what "a bit" means); 1003 (mentions "caring for mom," but does not describe any activities she engages in).) The ALJ also stated a function report indicated Plaintiff did "some cooking" and washed her mother's laundry "because her mother was unable to do so." (A.R. 34.) The ALJ stated this was inconsistent with Plaintiff's testimony that her mother did all the cooking and her own laundry. The function report the ALJ references, however, does not state Plaintiff's mother was unable to do laundry. Rather, it stated "She cooks and I try to clean and laundry." (*See* A.R. 452.) It does not specify whether the reference to "and laundry" included doing her mother's laundry, or only her own. Moreover, the "some cooking" the ALJ refers to was preparing "cereal and milk, or beef hot dogs or soup." (A.R. 453.) The Court does not find the function report meaningfully contradicts Plaintiff's testimony.

The ALJ's finding of inconsistency related to Plaintiff's cane use is also not supported. Plaintiff testified that sometimes she needs to use her cane; other times she just carries it in case she needs to use it. (A.R. 101.) This is consistent with the record. (*Compare* A.R. 952 (noting Plaintiff brought cane to physical therapy "but was not using it"); *with* 971 (noting Plaintiff was "using a brace and in assistance with cane"); *and* 1024 (noting "when pain is most severe she does use a

cane when ambulating").)

Treatment records must be viewed in light of the overall diagnostic record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). When read as a whole and in context, the treatment records and clinical observations cited by the ALJ here do not contradict or undermine Plaintiff's testimony.

As such, the Court finds that the ALJ's credibility finding is not supported by specific, clear, and convincing reasons.

## B.    The ALJ's Evaluation of the Treating Physician's Opinions

Plaintiff contends that the ALJ improperly discounted Dr. Nichols' opinions without clear and convincing reasons. In response, the Commissioner argues the ALJ properly considered his opinions.

### 1.    Legal Standard

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight

should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id. See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain circumstances. *Lester,* 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

> 2. Dr. Nichols

Dr. Nichols was Plaintiff's treating physician. Therefore, even if contradicted by another medical source, the ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, to discount his opinions. Again, the ALJ failed to do so.

In her decision, the ALJ gave Dr. Nichols' opinions "little weight." (A.R. 36.) The ALJ determined Dr. Nichols' opinions were not entitled to controlling weight because they were inconsistent with (1) his own treatment notes; (2) the treatment notes of Dr. Terrance Cahill, M.D., Tina Heikens, PT, and Julia Bolding, M.D.; (3) the medical records overall; (4) and Plaintiff's reported activities of daily living.

An ALJ may reject a treating physician's opinion on the basis that a conflict exists between the treating physician's opinion and the physician's notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Here, however, the ALJ did not explain or offer any examples of how Dr. Nichols' opinions conflicted with his own treatment notes. Although the ALJ is permitted to consider inconsistencies between a treating physician's opinion and other evidence of record, the ALJ's stated reason for discounting Dr. Nichols' opinions – that his opinion was inconsistent with his own treatment records – was not discussed with any particularity and thus, was not supported at all.

The ALJ also stated Dr. Nichols' opinions were inconsistent Dr. Cahill, Dr. Bolding and Ms. Heikens' notes that indicated Plaintiff was in no apparent distress, appeared well, and had a normal mood, behavior and thought process. (A.R. 36.) This finding is not supported. Contrary to the ALJ's finding, Ms. Heikens' treatment note says Plaintiff "is here today in obvious emotional distress." (A.R. 810.) She also noted Plaintiff's lower extremities were "too painful at this time to complete any lower extremity muscle testing." (A.R. 811.) Likewise, Dr. Bolding's notes state Plaintiff "was very depressed appearing," that she had "very pressured speech," and was "extremely tangential and difficult to get a good history out of." (A.R. 734.) Dr. Bolding also noted Plaintiff "does appear to have severe psychiatric issues." (A.R. 735.)

The ALJ further stated Dr. Nichols' opinions were inconsistent with the medical records overall. (A.R. 36.) Again, however, the ALJ's finding is not supported when the medical records are carefully reviewed. For example, the ALJ states the records "consistently showed . . . a normal gait." (*Id.*) But Dr. Cahill noted that in July 2015 Plaintiff "walks with a wide base, short steps, slightly forward flexed posture." (A.R. 1076.) The ALJ also stated the mental status examinations showed her memory was okay, and her concentration, focus and attention span were intact. (A.R. 36.) As discussed, however, Ms. Lyson's records contain no less than 30 references to Plaintiff's memory and concentration problems. (*See* A.R. 560, 562, 563, 568, 892, 898, 907, 908, 911, 914, 918, 920, 921, 924, 926, 928, 930, 931, 932, 940, 942, 943, 1013, 1015, 1097, 1098, 1099, 1101, 1104, and 1105.)

Next, with regard to Plaintiff's daily activities, an ALJ may reject a doctor's opinion that is inconsistent with a claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But as previously discussed, the ALJ's findings with regard to Plaintiff's daily activities are not supported by the record. Although there are references in the record to activities such as raking, mowing, and cleaning up after her dog, the record clearly indicates these activities exacerbated Plaintiff's pain. (*See* A.R. 599, 609, 951-52, 956-57, 979-80, 1023.)

Finally, as noted above, "[t]he ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2-6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim*, 763 F.3d at 1161. The failure to consider these factors "constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. Here, the ALJ did not appropriately address these factors in discounting the weight to be afforded to Dr. Nichols' opinions.

Accordingly, the Court finds the ALJ erred with respect to Dr. Nichols' opinions.

### 3. Ms. Lyson

Although not directly raised by Plaintiff, the Court further finds the ALJ also erred with regard to Ms. Lyson's opinion.

At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors. 20 C.F.R. 416.913(a), (d) (amended March 27, 2017). *Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions). Opinions of "other sources," are not entitled to the same deference. *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir.

2012). The ALJ may discount opinions from "other sources" if the ALJ gives "germane reasons" for doing so. *Id.*

As a Licensed Clinical Professional Counselor, Ms. Lyson is not an acceptable medical source but is rather an "other" source. 20 C.F.R. § 404.1513(d). The fact that Ms. Lyson is not an acceptable medical source is not, in and of itself, a germane reason to afford her opinion lesser weight. *Haagenson v. Colvin*, 656 Fed.Appx. 800, 802 (9th Cir. 2016).

The ALJ stated she assigned "minimal weight" to Ms. Lyson's opinion because it was "highly inconsistent with her own treatment records showing that he [sic] claimant's memory was okay and her attention and concentration were intact." (A.R. 36-37.) This is not a germane reason to discount Ms. Lyson's opinion. It is flatly contradicted by the record, which shows Ms. Lyson repeatedly noted Plaintiff had memory and concentration problems. (*See* A.R. 560, 562, 563, 568, 892, 898, 907, 908, 911, 914, 918, 920, 921, 924, 926, 928, 930, 931, 932, 940, 942, 943, 1013, 1015, 1097, 1098, 1099, 1101, 1104, and 1105.)

Accordingly, the Court finds that the ALJ erred with respect to Ms. Lyson.

**C.    Application of Medical Vocational Guidelines Rules 201.14 and The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.**

If a claimant shows she cannot return to previous work, the burden of proof shifts to the Secretary at step five to show that the claimant can do other kinds of

work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The Secretary may use a vocational expert to meet that burden. *Id.* Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Id.* "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422

Plaintiff argues the hypothetical the ALJ relied on to find there are jobs she can perform exceeded the limitations found by Plaintiff's treating physician. Plaintiff further argues that had Dr. Nichols' opinion been credited, she would have been found disabled under Medical Vocational Guidelines Rule 201.14. As discussed above, the Court has determined the ALJ failed to adequately support her reasons for discounting Plaintiff's testimony and Dr. Nichols and Ms. Lyson's opinions. Accordingly, these errors may have infected the RFC determination, the hypotheticals the ALJ relied on, and in turn, the ALJ's determination at step five.

Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

/ / /

## V.  REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for proper consideration of all of her impairments, her credibility, the medical evidence, and vocational evidence. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728.  If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate.  On remand, the ALJ shall re-evaluate Plaintiff's credibility.  The ALJ shall also properly evaluate the opinions of Dr. Nichols and Ms. Lyson.  The ALJ shall either properly support her findings with specific and legitimate reasons or afford these opinions controlling weight.  The ALJ shall further reconsider whether Plaintiff can perform work in the national economy based upon a hypothetical that incorporates all of her impairments and limitations supported by the record.

## VI.  CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. **IT IS ORDERED**.

DATED this 30th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge